UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTINA HUTTO,<br><br>　　　　　　Plaintiff(s),<br><br>　v.<br><br>ORION SYSTEMS INTEGRATORS LLC,<br><br>　　　　　　Defendant(s). | CASE NO. C25-0984-KKE<br><br>ORDER DENYING DEFENDANT'S MOTION TO CHANGE VENUE |

Plaintiff Christina Hutto sues her former employer, Orion Systems Integrators, LLC ("Orion"), for gender-based harassment, discrimination, and wrongful termination and for violating Washington's Silenced No More Act. Orion now moves to transfer this case to the U.S. District Court for the District of New Jersey, arguing New Jersey has a closer connection to the case and is more convenient to the parties and witnesses. Dkt. No. 15. Orion is headquartered in New Jersey. But Hutto lives in Washington and worked remotely from her home office in Seattle. Her supervisor, who allegedly harassed her, worked remotely from Florida.

Because Orion has not made a "strong showing" that litigating in New Jersey would be more convenient or in the public interest, Hutto's choice to litigate in the place where she lives and works is entitled to deference. The Court will therefore deny Orion's Motion to Change Venue. Dkt. No. 15.

ORDER DENYING DEFENDANT'S MOTION TO CHANGE VENUE - 1

## I. BACKGROUND

Orion is a technology company headquartered in New Jersey that provides "a wide range of" services, including "custom software development," "cloud services, and "data analytics." Dkt. No. 16 ¶¶ 2, 3. While "the majority" of Orion's employees are located in New Jersey or nearby states, many of its employees work remotely from states across the country and internationally. *Id.* ¶¶ 3, 5; Dkt. No. 18 ¶ 3. The company currently employs four individuals in Washington. Dkt. No. 16 ¶ 5.

In 2023, Orion hired Hutto as its Vice President of Global Alliances. Dkt. No. 1-1 ¶ 4.1. At that time, and throughout her employment, Hutto worked remotely from her home office in Seattle. Dkt. No. 18 ¶ 3; Dkt. No. 16 ¶ 7. When she needed to travel for work, Orion would pay Hutto's travel time and expenses. Dkt. No. 18 ¶ 3. Hutto still resides in Washington. Dkt. No. 1-1 ¶ 2.1.

Shortly after joining Orion, Hutto alleges that her supervisor, Mark Berler, began harassing her. She alleges Berler made clear he "did not want a woman—especially a mother—on his team," and so he "excluded [Hutto] from meetings, left [her] off of important emails, and made inappropriate comments about" her. Dkt. No. 1-1 ¶¶ 4.2–4.3. As time went on, the mistreatment got worse. *Id.* ¶ 4.4. At one point, "Berler berated [Hutto] in front of her peers and colleagues and made it clear that he wanted [her] to resign." *Id.*

Many of these alleged interactions apparently occurred online. While Hutto was working remotely from Washington, Berler worked remotely from his home office in Florida. Dkt. No. 18 ¶ 3. Other colleagues worked from other states, including Georgia, Illinois, Massachusetts, and New York. *Id.* And at least one colleague worked from India. *Id.*

Hutto reported Berler's conduct to Orion's Human Resources ("HR") department. Dkt. No. 1-1 ¶ 4.5. But she alleges the harassment continued. *Id.* ¶ 4.6. After she complained again,

HR allegedly told Hutto that Berler "would never change" and "it was probably best if [she] agreed to a mutual separation of employment." *Id.* ¶ 4.7. Hutto refused. *Id.* But shortly thereafter, Orion terminated her employment. *Id.* ¶ 4.9. The company offered Hutto a severance agreement containing a non-disparagement clause that would have required her to agree not to make "negative statements or do anything which derogates [Orion]." *Id.* ¶ 4.10; Dkt. No. 18 at 17. Hutto refused to sign the clause and claims that asking her to do so violated Washington law. Dkt. No. 18 ¶¶ 6, 9; Dkt. No. 1-1 ¶¶ 5.13–5.18.

On May 1, 2025, Hutto filed this lawsuit in King County Superior Court, asserting claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000 et seq.; the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60.010 et seq.; and Washington's Silenced No More Act, Wash. Rev. Code § 49.44.211. *See generally* Dkt. No. 1-1. Orion removed the case to this Court (Dkt. No. 1) and then filed this motion to transfer venue to the District of New Jersey (Dkt. No. 15). Hutto responded, opposing the motion (Dkt. No. 17), and Orion filed a reply (Dkt. No. 19). Orion's motion is now ripe for consideration.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 1404(a), this Court may "transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses" and "the interest of justice." The Court decides motions to transfer under § 1404(a) based on an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Before granting such a motion, the Court must find that (1) the proposed forum is one in which the case "might have been brought," and (2) "the convenience of the parties and witnesses" and "the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (cleaned up).

ORDER DENYING DEFENDANT'S MOTION TO CHANGE VENUE - 3

If the case could have been brought in the proposed forum, the Court weighs several "private and public interest factors" to determine if convenience and the interest of justice warrant transferring the case there. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Private interest factors include (1) the location where the relevant agreements were negotiated or the alleged events took place; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) each party's contacts with the forum, and the relation of those contacts to the plaintiff's cause of action; (5) the differences in litigation costs in each forum; (6) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (7) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Public interest factors include (8) the public interest in the local adjudication of local controversies and (9) the relative congestion of the two courts. *Decker Coal Co.*, 805 F.2d at 843.

As the moving party, Orion has the burden to show that convenience and the interest of justice favor transfer. *Jones*, 211 F.3d at 499.[1] "[T]o warrant upsetting the plaintiff's choice of forum[,]" a "defendant must make a strong showing of inconvenience." *Decker Coal Co.*, 805 F.2d at 843. If transfer would merely shift the inconvenience from one party to another, the court will deny the motion. *Van Dusen*, 376 U.S. at 645–46 ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.").

---

[1] Orion contends "it is Plaintiff's burden to establish that the Western District of Washington is a proper venue." Dkt. No. 15 at 2 (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)). But Orion's reliance on *Piedmont Label* is misplaced. That case was an appeal from the denial of a motion for summary judgment based on improper venue, not a motion to transfer. 598 F.2d at 492. Here, Orion has not argued that venue in this District is improper, but merely that the District of New Jersey is more convenient. "As the part[y] that moved for a transfer," Orion bears "the burden of demonstrating that the § 1404(a) criteria have been met." *wedi Corp. v. Hydroblok Grand Int'l Ltd.*, No. C23-0452 TSZ, 2023 WL 7413086, at *1 n.3 (W.D. Wash. Nov. 9, 2023).

ORDER DENYING DEFENDANT'S MOTION TO CHANGE VENUE - 4

**B.    Orion Has Not Shown That Convenience and the Interest of Justice Favor Transfer**

Because there is no question that this case might have been brought in the District of New Jersey, Orion's motion turns on whether convenience and the interest of justice warrant overturning Hutto's choice to litigate in this District.[2] The Court therefore considers each of the private and public interest factors raised by the parties.

1. Location of relevant agreements and events

Hutto contends the location where the parties negotiated and executed relevant agreements weighs against transfer. Dkt. No. 17 at 6–8. She states that she signed all her employment documents, including her offer letter, from her home office in Seattle. Dkt. No. 18 ¶ 2. On the other hand, Orion's Head of Talent Acquisition and Recruiting, Mike Andrew, also signed the letter. Dkt. No. 16-1 at 7–9. And while it is unclear where he did so, Orion indicates that he lives in or near New Jersey. Dkt. No. 19 at 6.

Hutto's statutory claims, however, do not arise out of her offer letter or any other agreement with Orion. Her claims are for retaliation, disparate treatment, hostile work environment, and violation of the Silenced No More Act—not breach of contract. Thus, regardless of where the parties negotiated or executed her employment documents, this factor carries little weight. *See Nat'l Prods., Inc. v. Wireless Accessory Sols., LLC*, No. C15-2024JLR, 2018 WL 1709494, at *4 n.2 (W.D. Wash. Apr. 9, 2018) ("This is not a contract case and so … the location where the relevant agreements were negotiated and executed … is not relevant here."); *Amazon.com, Inc. v. Straight Path IP Grp. Inc.*, No. 5:14-CV-04561-EJD, 2015 WL 3486494, at *8 (N.D. Cal. May 28, 2015) (finding location of agreements irrelevant where agreements were not at issue).

---

[2] In a civil case where the defendant is a corporation, venue is proper in any judicial district in which the defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b)(1), (c)(2). Orion is headquartered in New Jersey and is therefore subject to personal jurisdiction in the District of New Jersey. Dkt. No. 16 ¶ 3. Venue would therefore be proper in that District. This does not suggest, however—and Orion has not argued—that venue is not also proper in this District.

ORDER DENYING DEFENDANT'S MOTION TO CHANGE VENUE - 5

Given the virtual nature of Hutto's work and her colleagues' locations in several states, there is also no clear state in which the alleged events mostly occurred. Hutto worked remotely from Seattle and contends "she was harassed, discriminated, and retaliated against in [this District]." Dkt. No. 17 at 8. She also received the non-disparagement clause she claims violated the Silenced No More Act here. Dkt. No. 18 ¶ 9. On the other hand, Orion made the decision to hire and fire her in New Jersey. *Id.* ¶ 4; Dkt. No. 16 ¶ 6. And Orion claims its "decision makers" are all located there or nearby. Dkt. No. 19 at 6.

On the whole, this case is no more centered in New Jersey than it is in Washington. *See Schouker v. Swarm Indus., Inc.*, No. 24-CV-07373-JSC, 2025 WL 948004, at *3, *6 (N.D. Cal. Mar. 28, 2025) (finding "no clear locus of the discrimination" where employment action "involve[ed] parties and witnesses working remotely, communicating via online platforms, and meeting in multiple locations") (cleaned up). Indeed, the alleged harassment occurred in neither state, but in Florida, where Hutto's supervisor worked. Dkt. No. 16 ¶ 8; Dkt. No. 18 ¶ 3. And Hutto identifies other Orion employees working from Georgia, Illinois, Massachusetts, Florida, New York, and India who she claims were also "involved in the … dispute." Dkt. No. 18 ¶ 3.

Accordingly, the location of relevant agreements and the alleged events is neutral.

2. <u>Familiarity with governing law</u>

Hutto brings Washington law claims under the WLAD and Silenced No More Act. Orion, however, contends that because Hutto's "offer letter was executed under New Jersey law," this factor favors transfer. Dkt. No. 15 at 6–7. Hutto's offer letter stated, "[t]his offer letter shall be construed in accordance with, and governed by, the laws of the state of New Jersey, without regard to principles of conflict of laws." Dkt. No. 16-1 at 7.

At this juncture, the Court need not determine which state's law applies to Hutto's claims because, regardless of the applicable law, "[f]ederal courts are equally equipped to apply distant

state laws when the law is not complex or unsettled." *Kokol v. Hubbell Power Sys., Inc.*, No. C24-0822 TSZ, 2025 WL 90925, at *3 (W.D. Wash. Jan. 14, 2025); *see, e.g., Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09cv2367 BEN (RBB), 2010 WL 2754249, at *3 (S.D. Cal. July 9, 2010) (holding that federal courts in Texas would be equally adept at applying California law related to unfair competition claims). Neither Hutto nor Orion contend that the law at issue is complex or unsettled, so federal courts in Washington or New Jersey are equally suited to resolving this case.

The familiarity of each court with the governing law is therefore neutral.

3. <u>The plaintiff's choice of forum</u>

Under § 1404(a), "great weight is generally accorded plaintiff's choice of forum." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). To "upset[] the plaintiff's choice of forum," a defendant must "make a strong showing of inconvenience[.]" *Decker Coal Co.* 805 F.2d at 843. There is an exception when "the action has little connection with the chosen forum," *Kokol*, 2025 WL 90925, at *3, for example "when a plaintiff does not reside in the [chosen] forum or operative events occurred elsewhere," *Wise v. Techtronic Indus. Co., Ltd.*, No. C10-471MJP, 2010 WL 11553269, at *1 (W.D. Wash. Nov. 3, 2010).

Here, Hutto's claims have a substantial connection to this District. Orion contends otherwise, stating that "the only connection this case has to Washington is that Plaintiff worked remotely in Washington while employed by Orion." Dkt. No. 15 at 5. But Hutto's residence and place of work is undoubtedly significant. *See Maillet v. Endophys Holdings, LLC*, No. 2:24-CV-6901-SVW, 2024 WL 5424135, at *4 (C.D. Cal. Nov. 4, 2024) ("[T]he residence of the plaintiff, while not the only consideration, is a fact of 'high significance.'") (quoting *Grubs v. Consol. Freightways, Inc.*, 189 F. Supp. 404, 409 (D. Mont. 1960)). Indeed, a plaintiff's choice "is generally given significant weight when the plaintiff resides in the chosen forum." *T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*, No. C15-1739JLR, 2016 WL 1464468, at *4 (W.D. Wash. Apr.

ORDER DENYING DEFENDANT'S MOTION TO CHANGE VENUE - 7

14, 2016) (quoting *Nordquist v. Blackham*, No. C06-5433FDB, 2006 WL 259731, at *3 (W.D. Wash. Sept. 11, 2006)).

Because Hutto lived and worked in Washington while employed by Orion, her choice to sue in this District weighs against transfer.

4. <u>Each party's contacts with the forum and their connection with Hutto's claims</u>

Orion emphasizes that it is "headquartered in New Jersey, most of its employees with knowledge of [Hutto's] claims reside in New Jersey or neighboring states, and Orion's records are located in New Jersey." Dkt. No. 15 at 5. In addition, "the decisions to hire and terminate [Hutto] were made in New Jersey." *Id.* at 6. But as discussed, Hutto has significant contacts with this District where she currently lives and previously worked while employed at Orion. Orion contends Hutto's residence is not a "case-specific connection[] with the Western District of Washington." *Id.* at 5. To the contrary, Washington was where the alleged harassment was directed, where she felt its effects, and where she received the non-disparagement clause she claims violated the Silenced No More Act.

Overall, both parties have significant contacts with their respective states. And those contacts are roughly equivalent in their relation to this case. Accordingly, this factor is neutral.

5. <u>Litigation costs and convenience to the witnesses</u>

In considering the costs of litigating in each forum, "the Court must be careful to avoid a transfer that 'would merely shift rather than eliminate' the inconvenience of costs." *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011) (quoting *Decker Coal Co.*, 805 F.2d at 843). Here, transfer to the District of New Jersey could ease Orion's litigation costs by reducing expenses for its employees who might have to travel to appear before this Court. By the same token, however, transfer would increase travel costs for Hutto, who would undoubtedly be called to testify were this case to go to trial. "When presented with such a split, courts have" typically "sided with

ORDER DENYING DEFENDANT'S MOTION TO CHANGE VENUE - 8

the convenience of individual parties over the convenience of corporate parties" who "are better-equipped … to absorb increased litigation costs." *Maillet*, 2024 WL 5424135, at *4 (quoting *In re Ferrero Litig.*, 768 F. Supp. 2d at 1081). Because transfer would merely shift the expense of litigation from Orion, a company with over 500 employees (Dkt. No. 16 ¶ 5), to Hutto, an individual, the relative costs of litigation as between the parties weighs against transfer.

Courts also consider "[t]he relative convenience to the witnesses" when assessing litigation costs. *Hoyt v. Liberty Mut. Grp. Inc.*, No. 2:20-CV-00379-SMJ, 2021 WL 966018, at *4 (E.D. Wash. Mar. 15, 2021). In doing so, courts "consider not only the number of witnesses located in the respective venues, but also the nature and quality of their testimony." *Sloan v. Pfizer, Inc.*, No. 08-cv-1849-SBA, 2008 WL 4167083, at *5 (N.D. Cal. Sept. 8, 2008); *see also Gates Learjet Corp. v. Jenson*, 743 F.2d 1325, 1335–36 (9th Cir. 1984) (holding that district court erred in focusing "on the number of witnesses … in each location" rather than "the materiality and importance of" their anticipated testimony). Orion contends this factor favors transfer because "[t]here are no non-party witnesses located in" this District. Dkt. No. 15 at 6 (emphasis omitted). But Orion identifies only one potential witness located in New Jersey: Cezary Kuziemski, its Head of Human Resources. Dkt. No. 15 at 6; Dkt. No. 19 at 4–5. And because a party may compel its own employees to testify regardless of venue, their convenience is afforded relatively less weight. *Thanos v. Unum Life Ins. Co.*, No. 15-CV-03616-YGR, 2015 WL 5770786, at *3 (N.D. Cal. Oct. 2, 2015) ("[T]he convenience of a party's employee witnesses is entitled to little weight because they can be compelled by their employers to testify regardless of venue.").

In its reply, Orion also identifies Mike Andrew, its Head of Talent Acquisition and Recruiting, but only states that he is located "in" or "around" New Jersey and never explains the importance of his testimony. Dkt. No. 19 at 6. In any event, as an Orion employee, his location is given little weight. *Thanos*, 2015 WL 5770786, at *3. Orion briefly mentions a former

ORDER DENYING DEFENDANT'S MOTION TO CHANGE VENUE - 9

employee in New York who, along with Kuziemski, "received" Hutto's allegations. Dkt. No. 15 at 2. But Orion never states that this former employee would be likely to testify or explains how their testimony would be important or, indeed, any different from Kuziemski's. In sum, Orion has not identified any non-employee witnesses who would be inconvenienced by litigating in this District.

Because transfer would merely shift the expense of litigation from Orion to Hutto, who is relatively less capable of absorbing increased costs, this factor weighs against transfer.

6. The availability of compulsory process

Neither party has identified a need for compulsory process to compel the attendance of unwilling non-party witnesses. Orion states in conclusory fashion that "the much more likely material, non-party and potentially unwilling witnesses will all be in New Jersey." Dkt. No. 15 at 6 (emphasis omitted). But it identifies only Kuziemski, who, as an Orion employee, could be compelled to testify. *Id.; see In re Ferrero Litig.*, 768 F. Supp. 2d at 1080 (finding "sole conclusory statement" that "the key witnesses in this action are located in New Jersey (or elsewhere on the east coast)" failed to "satisfy Defendant's burden of showing that transfer is warranted").

Since neither party has identified potentially relevant non-party witnesses, the availability of compulsory process is neutral.

7. The ease of access to sources of proof

Orion does not dispute that the records relevant to this case are largely "maintained in electronic form." Dkt. No. 17 at 12; *see* Dkt. No. 19 at 6. "Where the evidence is in electronic form, this factor is neutral or carries only minimal weight." *Thanos*, 2015 WL 5770786, at *4. "The weight of this factor has decreased as technological advances in document storage and retrieval have greatly reduced the burden of transporting documents between districts."

*TransPerfect Glob., Inc. v. Motionpoint Corp.*, No. 10-02590 CW, 2010 WL 3619565, at *4 (N.D. Cal. Sept. 13, 2010).

Neither party identifies relevant physical evidence that could not be readily transmitted by electronic means. Accordingly, the ease of access to sources of proof is neutral.

8. <u>Local interest in the controversy</u>

As Hutto notes, Washington has an interest in the enforcement of its laws protecting Washington workers. Dkt. No. 17 at 13. But New Jersey also has some interest in this lawsuit because Orion is headquartered and employs most of its workforce there. *See* Dkt. No. 16 ¶¶ 3, 5. Overall, neither state has a significantly greater interest in having this case resolved locally.

9. <u>Relative court congestion</u>

This factor examines "whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet Corp.*, 743 F.2d at 1337. "To measure congestion, courts compare the two fora's median time from filing to disposition or trial." *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *6 (N.D. Cal. Feb. 14, 2014); *In re Ferrero Litig.*, 768 F. Supp. 2d at 1082 (comparing median "time to trial" between two districts); *TransPerfect Glob., Inc.*, 2010 WL 3619565, at *5 (same). Here, neither party presents statistics on the median time from filing to disposition in this District or the District of New Jersey. Hutto cites a report from 2020 concerning the backlog of cases in the District of New Jersey at that time. Dkt. No. 17 at 13. And Orion responds by observing that the District of New Jersey has a greater number of judges. Dkt. No. 19 at 7. Neither data point answers the relevant question of how quickly each district's courts could likely resolve this case.

Accordingly, relative court congestion is neutral.

10. Weighing the factors

This is an employment dispute arising out of remote work involving individuals in multiple states communicating online. That many of the § 1404(a) factors are neutral reflects that the underlying facts are not centered on a single location. The place where Orion is headquartered is significant. But so is the place where Hutto lived and worked at the time she claims to have been subjected to workplace mistreatment. Given the overall balance of factors, Hutto's choice of forum—which reflects her significant connection to this District—is determinative. Orion has not made the "strong showing of inconvenience" needed to override that choice. *Decker Coal Co.*, 805 F.2d at 843.

### III.  CONCLUSION

For the reasons stated above, Orion's motion to transfer venue to the District of New Jersey is DENIED.

Dated this 30th day of September, 2025.

Kymberly K. Evanson
United States District Judge